[No. 52638-3-I.  Division One.  May 24, 2004.]

CHRISTOPHER N. CALDWELL, *Plaintiff*, KRISTINE WHITTEMORE,
*Appellant*, v. THE DEPARTMENT OF TRANSPORTATION,
ET AL., *Respondents*.

694

*Timothy K. Ford* and *Katrin E. Frank* (of *MacDonald, Hoague & Bayless*), *James S. Rogers* and *Mary K. Fleck* (of *Rogers & Fleck*), and *Jordan Gross* (of *Yarmuth Wilsdon Calfo, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Catherine Hendricks, Assistant*, for respondents.

APPELWICK, J. — In autumn 1995, the motorcycle on which Kristine Whittemore was a passenger collided with a Department of Transportation (DOT) litter truck. Whittemore was severely injured and sued the motorcycle's driver, the truck's driver and the DOT. A jury determined that Whittemore and the motorcycle's driver were completely at fault for the accident. Whittemore appeals. She argues that the trial court erred when it determined that RCW 46.61.030 and RCW 46.61.215(2) provided some protection to the DOT and the truck's driver. She claims that the truck's driver was not actually or obviously engaged in work at the time of the accident but was traveling between temporary worksites. She also claims that the trial court gave prejudicial jury instructions and erred by refusing to give one of her proposed instructions. We affirm.

## FACTS

In autumn 1995, a three vehicle Department of Transportation crew worked to clear the storm drains along south Interstate 5's (I-5) left hand lanes. The crew was composed of a flusher truck, a litter truck, and a truck-mounted attenuator (TMA), also called a traffic control truck. After a few hours of work, the three trucks came to the gore point that separates the Mercer Street on-ramp from the interstate. A gore point is a small, triangular section of road, usually marked with white lines, meant to facilitate the on-ramp traffic's merger onto the highway. The first of the three vehicles, the flusher truck, entered the gore point, checked for oncoming traffic and then drove diagonally across the on-ramp to the left hand shoulder of the interstate where it started to flush the storm drains.

Next, Michael Howard, the litter truck's driver, stopped in the gore point, checked his mirror, and then drove diagonally across the on-ramp toward the left hand shoulder. His vehicle was equipped with three spinning amber lights, an arrow board, and a large reflective orange sign that read "Road Machinery Ahead." Christopher Caldwell, the motorcycle's driver, crashed into Howard's truck before it reached the shoulder. Caldwell hit the brakes on his motorcycle approximately 156 feet before colliding with the litter truck. Trial testimony placed his speed between 35 to 80 miles per hour. The on-ramp's speed limit was 55 miles per hour. Upon impact, Kristine Whittemore, a passenger on Caldwell's motorcycle, was thrown into I-5's northbound lanes. One of her vertebrae burst and damaged her spinal cord. Two other motorcyclists accompanied Caldwell onto the on-ramp at approximately the same rate of speed but managed to stop before hitting the litter truck.

Whittemore sued Caldwell, Howard, and the DOT. Caldwell did not defend and the trial court entered a default judgment against him. The trial court found that RCW 46.61.030 and RCW 46.61.215(2) provided Howard and the DOT some protection in this case.

A jury found that neither Howard nor the DOT were at fault for the accident. The jury assigned 35 percent of fault to Whittemore and 65 percent to Caldwell.

## ANALYSIS

### I. Standard of Review

We review a trial court's conclusions of law de novo. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993). "[E]rrors of law in jury instructions are [also] reviewed de novo, and an instruction's erroneous statement of the applicable law is reversible error where it prejudices a party." *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995). "An erroneous instruction does not require reversal unless prejudice is shown." *Boeing Co. v. Key*, 101 Wn. App. 629, 633, 5 P.3d 16 (2000). "Error is not

prejudicial unless it presumptively affects the outcome of the trial." *Boeing Co.*, 101 Wn. App. at 633.

■■ Jury instructions are reviewed in their entirety and are sufficient if they: "(1) permit each party to argue his theory of the case; (2) are not misleading; and (3) when read as a whole, properly inform the trier of fact of the applicable law." *Capers v. The Bon Marche*, 91 Wn. App. 138, 142, 955 P.2d 822 (1998).

## II. Jury Instructions

The trial court declined to give Whittemore's proposed Instruction 25, which states:

> On a limited access highway, it is unlawful for any person:
>
> (1) to drive a vehicle over, upon, or across any curb, central dividing section, or other separation or dividing line; or
>
> (2) to make a left turn or semi-circular or U-turn except through an opening provided for that purpose in the dividing curb section, separation or line; or
>
> (3) to drive any vehicle except in the proper lane provided for that purpose and in the proper direction and to the right of the central dividing curb, separation section, or line; or
>
> (4) to stop or park any vehicle or equipment within the right of way, including the shoulders thereof, except at points specifically provided therefor (sic).

Instruction 25 would have indicated that Howard was subject to certain rules of the road. In addition, Whittemore claims that Instruction 14 was erroneous. Instruction 14 states:

> A person using the highway is entitled to assume that other persons thereon will obey the traffic laws, and he has the right to proceed upon such an assumption until he knows, or in the exercise of ordinary care should know, to the contrary. Only when it becomes apparent, or should have reasonably become apparent, to the favored driver that the disfavored driver will not yield is the favored driver required to react. A favored driver is entitled to a reasonable reaction time after it becomes apparent in the exercise of ordinary care that the disfavored

driver will not yield the right-of-way. You are instructed that Michael Howard is the favored driver and Christopher Caldwell is the disfavored driver.

Whittemore argues that whether Howard was the favored driver was a question for the jury.

The basis for the trial court to decline proposed Instruction 25 and to grant Instruction 14 was RCW 46.61.030, which provides:

> Unless specifically made applicable, the provisions of this chapter except those contained in RCW 46.61.500 through 46.61.520 shall not apply to persons, motor vehicles and other equipment while engaged in work within the right of way of any highway but shall apply to such persons and vehicles when traveling to or from such work.

RCW 46.61.030. Whittemore claims RCW 46.61.030 does not apply to Howard because at the moment of impact he was not actually engaged in work but traveling between temporary worksites.

Whittemore relies on *Derheim v. N. Fiorito Co.*, 80 Wn.2d 161, 492 P.2d 1030 (1972), for the proposition that Howard was not actually engaged in work, but traveling between worksites at the time of the accident. Br. of Appellant at 24-25. Whittemore's reliance on *Derheim* for her claim that Howard was traveling between worksites is misplaced. The defendant truck driver in *Derheim* received a load of dirt at a highway improvement worksite near Vancouver, Washington. *Derheim*, 80 Wn.2d at 162. After filling his truck with dirt at that worksite he was instructed to take it along I-5 to another worksite. *Derheim*, 80 Wn.2d at 162-63. Road signs along this route, just outside of the first worksite, announced to drivers that they had left the construction zone. *Derheim*, 80 Wn.2d at 163. At the turnoff for the second worksite, Derheim veered right and then made a sharp left turn directly into the plaintiff's car. *Derheim*, 80 Wn.2d at 163.

On appeal, Derheim asserted that he was engaged in work on the surface of a highway at the time of the accident

and RCW 46.61.030 exempted him from the rules of the road. *Derheim*, 80 Wn.2d at 163-64. The court held that it was "apparent that the legislature was concerned with the movement of equipment and vehicles within the construction site area but was not excepting traffic traveling to and from the construction site." *Derheim*, 80 Wn.2d at 164. Accordingly, Derheim was not entitled to the protections of RCW 46.61.030. *Derheim*, 80 Wn.2d at 164-65. The facts in this case are distinguishable. Where the driver in *Derheim* traveled from one worksite to another worksite, the worksite for Howard was the southbound lanes of I-5. *See Derheim*, 80 Wn.2d at 162-63. Unlike the defendant in *Derheim*, Howard did not exit one worksite to reach another merely by crossing the gore point; he never left his worksite.

■ Because Howard was engaged in work within the right-of-way and not traveling between temporary worksites, RCW 46.61.030 exempted him from the rules of the road under chapter 46.61 RCW. Caldwell, however, was subject to all of the rules of the road. The trial court was correct as a matter of law in determining that Howard was the favored driver and Caldwell the disfavored driver as stated in Instruction 14.

■ Next, Whittemore claims that Instruction 14 "effectively granted summary judgment in [Howard's] favor" under RCW 46.61.215(2) although the trial court "apparently intended, through a separate instruction, to submit that very issue to the jury [in] Instruction 16." RCW 46.61.215 requires:

> (1) The driver of a vehicle shall yield the right of way to any authorized vehicle or pedestrian actually engaged in work upon a highway within any highway construction or maintenance area indicated by official traffic control devices.
>
> (2) The driver of a vehicle shall yield the right of way to any authorized vehicle *obviously and actually* engaged in work upon a highway whenever such vehicle displays flashing lights meeting the requirements of RCW 46.37.300.

RCW 46.61.215 (emphasis added). Whittemore claims Instruction 14 took from the jury the question of whether Howard was obviously engaged in work on the surface of the highway. Whittemore is incorrect. Whether Howard was obviously engaged in work with the appropriate flashing lights was a factual question that the trial court appropriately left to the jury. Instruction 16, based on RCW 46.61.215(2), informed the jury that "[a] statute provides that the driver of a vehicle shall yield the right of way to any authorized vehicle obviously and actually engaged in work upon a highway whenever such vehicle displays flashing lights." This instruction in turn allowed Whittemore to argue that Howard was *not* obviously engaged in work on a highway and that his lights actually worsened the situation, which she did at trial, most notably in her closing argument.

Whittemore's assertion that Instruction 14 "effectively directed a verdict in favor of the defendants in this case" also fails to account for the ordinary care requirement. While Howard was the favored driver and not subject to the rules of the road under RCW 46.61.030, he was still required to exercise ordinary care. *See Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 867, 912 P.2d 1044 (1996). Whittemore was able to argue to the jury that Howard did not exercise ordinary care. "Ordinary care is care equal to that which a reasonable person would exercise under the same or similar circumstances." *Schooley*, 80 Wn. App. at 867. Accordingly, Instruction 14 did not effectively direct a verdict in Howard's favor.

It is undisputed that Howard was within the right-of-way of the highway. He was not traveling to or from his worksite. Because Howard was engaged in work within the right-of-way and not traveling to or from such work, the trial court correctly concluded RCW 46.61.030 applied to him. Therefore, Howard was exempt from the rules of the road. As a matter of law, proposed Instruction 25 was erroneous and Instruction 14 was correct. Instruction 14 permitted each party to argue its theory of the case, was not

misleading, and when read as a whole, properly informed the jury of the applicable law. Because the issues above are dispositive, we need not address the evidentiary issues raised by the State.

Affirmed.

BAKER and AGID, JJ., concur.

Review denied at 154 Wn.2d 1006 (2005).